UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBERT M. J.[1]

        Plaintiff,

v.                              1:21-CV-3 (JLS)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.



---

## DECISION AND ORDER

Plaintiff Robert M. J. brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the decision made by the Commissioner of the Social Security Administration finding that he was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 21. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 24, 25. For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross motion.

## PROCEDURAL HISTORY

On May 17, 2018, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

Title XVI, of the Social Security Act.[2]  T. 88.[3]  Plaintiff's applications were initially

denied, after which he timely requested a hearing before an Administrative Law

Judge ("the ALJ").  On December 20, 2019, Plaintiff appeared before the ALJ,

Sharda Singh.  Tr. 34-59.  On February 6, 2020, ALJ Singh issued a written

decision finding Plaintiff not disabled under the Social Security Act.  Tr. 12-33.  On

November 5, 2020, the Appeals Council ("AC") denied Plaintiff's request for review,

rendering the ALJ's decision the final decision of the Commissioner.  Tr. 1-6.

Thereafter, Plaintiff timely sought judicial review in this Court.  Dkt. No. 1.

## LEGAL STANDARDS

### I.   District Court Review

Judicial review of disability claims under the Act is limited to whether the

Commissioner's decision is supported by substantial evidence and whether the

correct legal standards were applied.  *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729

F.3d 172, 177 (2d Cir. 2013).  The Commissioner's factual findings are conclusive

when supported by substantial evidence.  *See Biestek v. Berryhill*, 139 S. Ct. 1148,

_____

[2] Plaintiff applied for both SSD and SSI.  To receive SSD, a claimant must show
that he/she became disabled while meeting the Act's insured status requirements.
*See* 42 U.S.C. § 423(d)(1)(A); *Schillo v. Kijakazi*, 31 F.4th 64, 69-70 (2d Cir. 2022).
SSI, on the other hand, "provides benefits to each aged, blind, or disabled individual
who does not have an eligible spouse and whose income and resources fall below a
certain level." *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C.
§ 1382(a)) (internal quotation marks omitted).  The Social Security Administration
uses the same five-step evaluation process to determine adult eligibility for both
programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning SSD), 416.920(a)(4)
(concerning SSI).

[3] The filing at Dkt. 13 is the transcript of the proceedings before the Social Security
Administration.  All references to Dkt. 13 are hereby denoted "Tr. __."

1152 (2019).  "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

While the Court does not determine *de novo* whether the claimant is disabled, the Commissioner's conclusions of law are not given the same deferential standard of review.  *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  If there is a reasonable doubt as to whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (holding that the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II.   <u>Disability Determination</u>

Disability under the Act is determined under a five-step test.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit.  *Id.* §§ 404.1572, 416.972.  If the

ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. *Id.* §§ 404.1520(b), 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* §§ 404.1520(d), 416.920(d). If such criteria are met, then the claimant is declared disabled. *Id.* §§ 404.1520(d), 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *Id.* §§ 404.1545, 416.945.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. *Id.* §§ 404.1560(b)(3), 416.960(b)(3). If the ALJ finds that the claimant is

unable to perform past relevant work, the analysis proceeds to the fifth and final step. *Id.* §§ 404.1520(g)(1), 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her/his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1560(c), 416.960(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given her/his RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ made the following five findings of fact and conclusions of law. Tr. 15-29. First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2020, and he had not engaged in substantial gainful activity since February 18, 2018. Tr. 17-18. Second, the ALJ found that Plaintiff had the severe impairments of left shoulder impingement; chronic obstructive pulmonary disease ("COPD"); major depression; anxiety; post-traumatic stress disorder ("PTSD"); and post-concussion disorder. Tr. 18. Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. *Id.* Fourth, the

ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R.

§§ 404.1567(b) and 416.967(b), except he:

> can never climb ladders, ropes, or scaffolds; can occasionally climb
> ramps and stairs, balance, stoop, kneel, crouch, and crawl; can
> occasionally reach overhead with the left upper extremity; must avoid
> concentrated exposure to irritants such as fumes, odors, dusts, and
> gases; must avoid exposure to unprotected heights; is limited to
> understanding, remembering, and carrying out simple, routine,
> repetitive non-complex tasks; and is limited to occasional contact with
> supervisors, co-workers, and the general public.

Tr. 19.[4]  Fifth, the ALJ determined that Plaintiff was unable to perform his past

relevant work; however, there were jobs that existed in significant numbers in the

national economy he could perform.  Tr. 27-29.

## II.    Plaintiff's Arguments

Plaintiff makes three arguments in support of his motion for judgment on the

pleadings.  First, Plaintiff argues that the ALJ committed legal error in failing to

make specific findings involving his ability to handle stress.  Dkt. No. 21 at 22-25.

Second, Plaintiff argues that the ALJ erred in implementing a mechanical

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting
or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b),
416.967(b). "Even though the weight lifted may be very little, a job is in this
category when it requires a good deal of walking or standing, or when it involves
sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*
§§ 404.1567(b), 416.967(b). "To be considered capable of performing a full or wide
range of light work, you must have the ability to do substantially all of these
activities." *Id.* §§ 404.1567(b), 416.967(b). "If someone can do light work, we
determine that he or she can also do sedentary work, unless there are additional
limiting factors such as loss of fine dexterity or inability to sit for long periods of
time." *Id.* §§ 404.1567(b), 416.967(b).

application of the age categories. *Id.* at 25-27. Third, Plaintiff argues that the ALJ erred in evaluating limitations due to his mental impairments. *Id.* at 27-29.

## III.  ANALYSIS

### A. Plaintiff's Ability to Deal with Stress and the Medical Opinion of Kalaiselvi Rajendran, M.D.

Plaintiff argues that the ALJ failed to assess properly the impact that stress would have on his ability to perform substantial gainful employment, and failed to address Dr. Rajendran's "multiple detailed observations of how work stress caused Plaintiff to decompensate." Dkt. No. 21 at 23-25. The ALJ properly assessed Dr. Rajendran's opinion and Plaintiff's ability to deal with stress.

As an initial matter, Plaintiff relies on Social Security Ruling ("SSR") 85-15 in support of his argument that the ALJ failed to assess properly his ability to deal with stress. Dkt. No. 21 at 23-24. The ruling does not apply to Plaintiff's case. SSR 85-15, "descriptively titled 'The Medical-Vocational Rules as a Framework for Evaluating *Solely* Nonexertional Impairments,' does not apply to a case, such as this one, in which a plaintiff suffers from a combination of exertional and non-exertional impairments." *Roma v. Astrue*, 468 F. App'x 16, 20 (2d Cir. 2012) (emphasis in original). Courts within the Second Circuit have consistently held that SSR 85-15 does not apply to claimants who suffer from both exertional and non-exertional impairments. *Acevedo v. Saul*, 577 F. Supp. 3d 237, 252 (S.D.N.Y. 2021); *see Wyder v. Colvin*, No. 1:16-CV-817, 2018 WL 3866669, at *4 (W.D.N.Y. Aug. 15, 2018) (collecting cases). Because Plaintiff suffered from exertional impairments, such as left shoulder impingement, and non-exertional impairments, such as

depression, SSR 85-15 is inapplicable.  Nonetheless, the ALJ properly assessed evidence in the record involving Plaintiff's ability to deal with stress, and the RFC reflects the limitations she found supported by the record.

Plaintiff argues that the ALJ failed to address Dr. Rajendran's "multiple detailed observations of how work stress caused Plaintiff to decompensate, or his statement regarding Plaintiff's inability to work without decompensating more." Dkt. No. 21 at 23, citing Tr. 456, 458, 470, 471, 475, 572, 573, 578.  Contrary to Plaintiff's assertion, the ALJ explicitly addressed Dr. Rajendran's treatment notations, including those cited by Plaintiff, as well as the doctor's medical opinion.

The ALJ summarized Dr. Rajendran's treatment notations and medical source opinion.  Tr. 23.  The ALJ concluded that the doctor's treatment notations, together with other evidence in the record, did not support Plaintiff's assertion that his mental impairments precluded substantial gainful employment.  *Id.*

Although Plaintiff asserts that Dr. Rajendran's treatment notations contain detailed observations of his inability to deal with stress in the workplace, it is not enough for him to argue that evidence in the record supports his assertion.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  Plaintiff fails to do so.

Although Dr. Rajendran noted Plaintiff's work-related stress, his notations failed to contain observations of what specific aspects of work increased Plaintiff's stress.  On January 23, 2018, Dr. Rajendran noted Plaintiff's self-report that he felt

work was "too much stress." Tr. 475. Dr. Rajendran gave Plaintiff "time off for 10 to 14 days" to "decide what he wants to do." *Id.* On February 7, 2018, Dr. Rajendran noted Plaintiff's subjective reports, that just thinking of work increased anxiety, and stated Plaintiff was "not able to go to work." Tr. 470-471. In March 2018, Dr. Rajendran observed that Plaintiff "seems to be a lot more peaceful" and he interviewed for a cleaning job. Tr. 468.

On May 24, 2019, Plaintiff reported to Dr. Rajendran that he felt able to work full time; however, the doctor noted that Plaintiff was "not very realistic" and should "take a part time job for a short period of time and if he is able to do it he can move on to a full time job." Tr. 458. On July 29, 2019, Plaintiff reported that he had "more problems" that he did not report in May. Tr. 456. The doctor observed memory problems. *Id.* In September 2019, Plaintiff reported his memory was improving. Tr. 454. Therefore, although Dr. Rajendran's treatment notations contain observations of Plaintiff's anxiety surrounding his work, the observations were general in nature and were considered by the ALJ in his overall assessment of Plaintiff's mental limitations.

In addition to treatment notations, the ALJ assessed Dr. Rajendran's opinion and found it "not persuasive." Tr. 26. Under 20 C.F.R. §§ 404.1520c, 416.920c an ALJ must articulate how he or she considered certain factors in assessing medical opinions and prior administrative findings. *See* 20 C.F.R. §§ 404.1520c(a)-(c),

416.920c(a)-(c).[5] The regulatory factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors. *Id.* §§ 404.1520c(c), 416.920c(c). An ALJ must explain his or her approach with respect to the first two factors when considering a medical opinion, but need not expound on the remaining three. *Id.* §§ 404.1520c(b), 416.920c(b).

Dr. Rajendran completed a medical source statement form in which he indicated that Plaintiff's ability to perform in all areas of mental work-related functions was "poor to none," including his ability to "deal with normal work stress." Tr. 572-573. The ALJ reasoned that the opined limitations were based on Plaintiff's "presentation and subjective complaints" at the time the form was completed, which she concluded conflicted with Plaintiff's "typical presentation and reports of functioning as reflected in earlier progress records." *Id.* The ALJ further noted the treatment records documented "some waxing and waning but overall moderate symptoms." *Id.* Overall, the ALJ concluded Dr. Rajendran's "extreme limitations" were not supported by, or consistent with, the substantial evidence of record. *Id.* To be sure, the ALJ did not specifically list each individual work-related limitation noted by Dr. Rajendran; however, the ALJ did summarize the doctor's treatment

---

[5] A prior administrative medical finding is a finding, other than the ultimate determination about whether a plaintiff is disabled, about a medical issue made by the SSA's Federal and State agency medical and psychological consultants at a prior level of review in a plaintiff's current claim based on their review of the evidence in plaintiff's case record. 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).

notations (Tr. 23) and opinion (Tr. 25-26), and she articulated her reasons for
finding the limitations not persuasive.

Plaintiff argues that the ALJ erred in failing to make a determination
regarding the frequency and limiting nature of his waxing and waning symptoms.
Dkt. No. 21 at 29.  Plaintiff argues, without citation to the record, that his waxing
symptoms would equate to at least one absence a month and being off task 15% of
the workday.  *Id.* at 27-28.  The ALJ properly considered that the medical record
documented "some waxing and waning" of symptoms.  Tr. 30.  But the ALJ
concluded Plaintiff's symptoms were moderate.  *Id.*  Plaintiff's assertion that he
would be absent and/or off task due to waxing symptoms is speculative, and
therefore fails.  And the ALJ's conclusion, that waxing and waning symptoms were
ultimately not disabling, was supported by the medical record.  *Lesanti v. Comm'r of
Soc. Sec.*, 436 F. Supp. 3d 639, 650 (W.D.N.Y. 2020).

In addition to Dr. Rajendran's treatment notations and opinion, the ALJ
considered other evidence in the record in formulating Plaintiff's mental RFC.  An
RFC finding is administrative in nature, not medical, and its determination is
within the province of the ALJ.   20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) ("We will
assess your residual functional capacity based on all the relevant evidence in your
case record."), *see id.* §§ 404.1546(c), 416.946(c) ("the administrative law judge or
the administrative appeals judge at the Appeals Council . . . is responsible for
assessing your residual functional capacity").  Additionally, the regulations direct
an ALJ not to "defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." *Id.* §§ 404.1520c, 416.920c.

In addition to Dr. Rajendran's opinion, the record contains administrative findings provided by consultative sources Agnes R. Jonas, Ph.D. (Tr. 361-366) and Dr. Lieber-Diaz (Tr. 65-66, 70-71). The record also contains a psychological and cognitive evaluation performed by Bonnie Jo Woods, Psy.D. Tr. 558-564. The ALJ found Dr. Jonas's administrative finding "somewhat persuasive." Tr. 25. The ALJ found the administrative finding of Dr. Lieber-Diaz "persuasive;" however, concluded Plaintiff had greater social limitations. Tr. 26. Lastly, the ALJ found Dr. Wood's opinion "somewhat persuasive." Tr. 25. Neither party asserts the ALJ erred in her evaluation of Drs. Jonas's or Lieber-Diaz's opinions. Plaintiff takes issue with the ALJ's treatment of Dr. Wood's opinion in step five; however, Plaintiff does not assert the ALJ erred in his evaluation of Dr. Woods's opinion in the step four analysis. Dkt. No. 21 at 25-27.

Dr. Jonas opined that Plaintiff had no evidence of limitations in his ability to: use reason or judgment in making work-related decisions; regulate emotions; control behavior; maintain well-being or personal hygiene; and understand, remember, and apply simple directions and instructions. Tr. 364. Dr. Jonas opined that Plaintiff had moderate limitations in his ability to sustain an ordinary routine and regular attendance at work and in his ability to understand, remember, and apply complex directions and instructions. *Id.* The doctor opined that Plaintiff had mild-to-moderate limitations in his ability to interact adequately with supervisors,

co-workers, and the public. *Id.* Dr. Jonas opined that Plaintiff had marked limitations in his ability to sustain concentration and perform a task at a consistent pace. *Id.* Lastly, he opined that Plaintiff had mild limitations in his ability to be aware of normal hazards and take appropriate precautions. *Id.*

Dr. Lieber-Diaz opined that Plaintiff was not significantly limited in understanding, remembering, and carrying out short and simple instructions; performing activities within a schedule and maintaining regular attendance; working in coordination or proximity to others without being distracted by them; making simple work-related decisions; interacting appropriately with the general public; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers and peers without distracting them; maintaining socially appropriate behavior; responding appropriately to changes in the work setting; and being aware of normal hazards. Tr. 70-71. Dr. Lieber-Diaz further opined Plaintiff was moderately limited in understanding, remembering, and carrying out complex instructions; remembering locations and work-like procedures; maintaining attention and concentration for extended periods; sustaining an ordinary routine without special supervision; completing a normal workday without interruptions; and setting realistic goals. Tr. 70-71. Dr. Lieber-Diaz concluded Plaintiff retained the capacity for simple work. Tr. 65-66.

Dr. Woods performed a psychiatric evaluation of Plaintiff. Tr. 558. Dr. Woods observed that Plaintiff was oriented to day, place, time, and situation; he

had a content mood and affect; and he denied suicidal and homicidal ideations. Tr. 560. Dr. Woods concluded due to Plaintiff's mostly average academic achievement abilities, she was "optimistic for [Plaintiff's] potential for obtaining current or future employment; particularly for a job that has some flexibility and does not require increased processing speed." Tr. 654.

The ALJ considered Plaintiff's testimony regarding stress provided in his application and at his hearing. Tr. 19, 20. In his application for benefits, Plaintiff was asked how stress or changes in schedule affect him, and he responded, "not well, but deal with it." Tr. 207. When asked if he ever lost a job because of problems getting along with people, Plaintiff answered "no." *Id.* Plaintiff wrote he had "short term memory loss." *Id.* At his hearing, Plaintiff testified it is "very hard to be around people" (Tr. 44) and he has problems with "crowds" (Tr. 48).

Although the ALJ did not mention stress explicitly in the RFC, the RFC implicitly included limitations due to Plaintiff's limitations dealing with various types of work-related stress. The ALJ limited Plaintiff to understanding, remembering, and carrying out simple, routine, repetitive non-complex tasks; and further limited Plaintiff to occasional contact with supervisors, co-workers, and the general public. Tr. 19; *see Kya M. v. Comm'r of Soc. Sec.*, 506 F. Supp. 3d 159, 166-167 (W.D.N.Y. 2020) ("[C]ourts within the Second Circuit have held that marked limitations in mental functioning, including a marked limitation in ability to deal with stress, do not mandate a finding of disability, but can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to simple,

14

routine and repetitive tasks in a work environment free of fast-paced production requirements.") (internal quotation and citations omitted) (collecting cases).

Overall, the administrative findings and medical opinion outlined above, together with objective evidence and Plaintiff's testimony, supports the ALJ's mental RFC findings.

## B. Borderline Age Category

Plaintiff argues the ALJ erred in her determination step five determination that Plaintiff was "an individual closely approaching advanced age." Dkt. No. 21 at 26-27. Plaintiff argues the ALJ erred in her evaluation of Plaintiff's borderline age situation because the ALJ failed to consider Dr. Woods's IQ findings and the ALJ "misidentified" Plaintiff's past relevant work. *Id.* at 26-27.

At step five of the disability analysis, the Commissioner bears the burden of showing that a plaintiff can perform work that exists in significant numbers in the national economy. *See Rosa v. Callahan*, 168 F.3d 72, 77-78 (2d Cir. 1999). The ALJ performs a two-part process, first the ALJ must assess Plaintiff's job qualifications by considering his RFC, age, education, and work experience; second, the ALJ must determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, at 460, (1983).

The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v.*

*Bowen,* 802 F.2d 601, 604 (2d Cir.1986).  The Grids "take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience." *Roma,* 468 F. App'x at 20 (quoting *Zorilla v. Chater,* 915 F. Supp. 662, 667 (S.D.N.Y.1996)).

The regulations divide age into three categories: "younger person" (under age 50); "person closely approaching advanced age" (age 50 to 54); and "person of advanced age" (age 55 or older).  20 C.F.R. §§ 404.1563(c)-(e), 416.963(c)-(e).

The regulations do not provide a bright line definition for what constitutes a borderline age situation.  If a plaintiff is within a few days to a few months of reaching a higher age category, and using the higher age category would result in a determination of disabled, the ALJ will consider whether to use the higher age category after evaluating the overall impact of all the factors of the case.  *See* 20 C.F.R. §§ 404.1563, 416.963, *see* HALLEX I-2-2-42, 2016 WL 1167001, at *1.  Most district courts within the Second Circuit follow the HALLEX and hold that a period of up to six months is borderline.  *Woods v. Colvin,* 218 F. Supp. 3d 204, 209 (W.D.N.Y. 2016) (collecting cases).

At step five, the ALJ concluded that there were a significant number of jobs in the national economy Plaintiff could perform based on his RFC and vocational factors.  Tr. 28.  The ALJ determined that Plaintiff was a person closely approaching advanced age with a high school education and no transferable skills.  *Id.*  Additionally, the ALJ found that Plaintiff's ability to perform all, or substantially all, of the requirements of work at the light level had been impeded by

16

his other limitations and therefore elicited testimony from a vocational expert ("VE"). *Id.* The VE testified that, given Plaintiff's age, education, work experience, and RFC, he would be able to perform the requirements of representative occupations such as shipping and weighing receiver, work ticket distributer, and sorter. *Id.*

An ALJ's failure to analyze the application of a borderline age consideration warrants remand so long as the high age category would entitle a plaintiff to benefits. *See Waldvogel v. Comm'r of Soc. Sec.*, No. 6:16-CV-868, 2017 WL 3995590, at *12 (N.D.N.Y. Sept. 11, 2017) (collecting cases). Here, the ALJ analyzed Plaintiff's borderline age category and provided reasoning to support her conclusion that application of the higher age category was not necessary.

The ALJ acknowledged a borderline age situation existed because Plaintiff was within "a few days to six months of attaining the next higher age category and use of the higher age category would result in a finding of 'disabled' instead of 'not disabled'." Tr. 27. Plaintiff was 52 years and seven months old, closely approaching advanced age, as of his alleged onset date. *Id.*[6] As of the hearing date, December 2019, Plaintiff was 54 years old and five months, approximately seven months from the higher age category of advanced age. Tr. 38.

---

[6] As of his alleged onset date of February 18, 2018, Plaintiff was 52 years and 7 months old (closely approaching advanced age). Tr. 60; 20 C.F.R. §§ 404.1563(d), 416.963(d). Plaintiff was 54 years and five months old (closely approaching advanced age) at the time of his December 2019 hearing. Tr. 38; 20 C.F.R. §§ 404.1563(d), 416.963(d).

The factors to be considered in deciding which age category to use includes: the time period under review; plaintiff's education level, education below the high school level may be vocationally disadvantageous; plaintiff's past relevant work; and plaintiff's RFC. POMS DI 25015.006E(1)(a)-(d). The ALJ considering the factors outlined in HALLEX I-2-2-42 and POMS DI 25015.006. Tr. 27. The ALJ considered that Plaintiff received a high school education, his work experience was performed at a semi-skilled level, and he had additional non-exertional limitations. Id. The ALJ concluded the factors did not substantially erode the unskilled light work occupational base. *Id.*

Plaintiff argues that, in making her step five determination, the ALJ failed to consider Dr. Woods's testing results. Dkt. No. 21 at 27-28.[7] Plaintiff asserts that testing revealed he had an IQ of "only 80 [. . .] when it had been in the average to high average range, at the time he received his high school education and throughout his working life." *Id.* at 27. Plaintiff fails to cite evidence that his IQ was higher than 80 at the time he graduated from high school. *Id.* Indeed, Dr. Woods stated in her evaluation that Plaintiff's "IQ and achievement are consistent with a high school degree, employment as a truck driver, and as a heavy equipment operator in the Air Force." Tr. 563.

---

[7] Of note, Plaintiff does not argue the ALJ erred in his assessment of Dr. Wood's opinion, including IQ testing, in formulating the RFC.

Overall, Plaintiff does not advance his argument beyond asserting a change in IQ scores and, therefore, his argument fails. As stated in *Michael S. v. Comm'r of Soc. Sec.*, No. 21-CV-512, 2022 WL 4922380, at *4 (W.D.N.Y. Oct. 4, 2022):

> Plaintiff neither marshals any record evidence nor cites any case law to develop that bare proposition into a viable argument challenging the ALJ's analysis. The Court is under no obligation to undertake that analysis on Plaintiff's behalf. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Absent a more developed argument, remand is not warranted on this ground. *Michael S.*, 2022 WL 4922380, at *4.

Next, Plaintiff argues the ALJ erred in categorizing Plaintiff's past relevant work as "semi-skilled," because Plaintiff performed the work of a snowplow driver below substantial gainful levels and therefore could not be classified as past relevant work. Dkt. No. 21 at 27. Plaintiff's argument fails.

In borderline age situations, the ALJ is directed to consider whether there are adverse factors, that when analyzed together, justify the use of a higher age category. POMS DI 25015.006. The POMS provide several examples of adverse factors, such as an inability to speak English, limited or marginal education, and unskilled or no work background. *Id.* Therefore, whether Plaintiff performed past work at the skilled or semi-skilled level is only one factor the ALJ may consider in her borderline age analysis. Here, the ALJ properly concluded Plaintiff performed past work at the semi-skilled level.

19

With the assistance of the VE, the ALJ concluded that Plaintiff's past relevant work consisted of highway maintenance worker (DOT 899-684-014) and truck driver (DOT 905.663-014), both classified as semi-skilled. Tr. 27. The ALJ concluded that Plaintiff's past relevant work consisted of semi-skilled positions in non-isolated industries and, therefore, was not considered to be a vocational adverse factor warranting use of a higher age category. *Id.* Thus, in accordance with POMS, Plaintiff's past relevant semi-skilled work was not an adverse factor.

Although Plaintiff argues that he did not perform the occupation of snowplow driver at substantial gainful levels, he does not assert the ALJ erred in concluding he performed work as a truck driver. Dkt. No. 21 at 27. At Plaintiff's hearing, the VE testified that Plaintiff's past relevant work "was in some sort of driving" such as "snowplow driver, the dump truck driver." Tr. 54. The VE stated the occupation of snowplow driver was semi-skilled and was "actually a highway maintenance worker." *Id.* The VE also testified that the occupation of "truck driver in general is semiskilled." *Id.* Therefore, even if the occupation of snowplow driver did not qualify as past relevant work, the occupation of truck driver remained. Plaintiff performed the occupation of truck driver, which is classified as semi-skilled, and would therefore not be considered an adverse factor.

Overall, the ALJ noted Plaintiff was almost five months from turning 55 and becoming "a person of advanced age," and considered whether a non-mechanical application of the age categories was warranted. Tr. 27. The ALJ provided a proper

analysis of Plaintiff's work experience and ultimately concluded the record did not support use of a higher age category.

The ALJ has the duty to evaluate conflicts in the evidence. *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).  As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).  As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's cross motion for judgment on the pleadings (Dkt. 24) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 21).  The Clerk of the Court will close this case.

SO ORDERED.

Dated:      May 16, 2023
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

Robert M. J. v. Comm'r
21-cv-3